James C. Shah (SBN 260435)
Email: jcshah@millershah.com
Kolin C. Tang (SBN 279834)
Email: kctang@millershah.com
**MILLER SHAH LLP**
19712 MacArthur Blvd., Suite 222
Irvine, California 92612
Telephone: (866) 540-5505
Facsimile: (866) 300-7367

Christopher E. Roberts (phv forthcoming)
Email: CRoberts@butschroberts.com
BUTSCH ROBERTS & ASSOCIATES LLC
7777 Bonhomme Avenue, Suite 1300
Clayton, Missouri 63105
Telephone: (314) 863-5700

Syed H. Hussain (phv forthcoming)
Email: sh@haseeblegal.com
Haseeb Legal LLC
420 E. Waterside Drive, Suite 3004
Chicago, Illinois 60601
Telephone: (630) 534-2527

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION

| | |
|---|---|
| RICARDO SOTO, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CARDONE VENTURES, LLC,<br><br>Defendant. | Case No.: 5:25-cv-00135<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

# CLASS ACTION COMPLAINT

COME NOW Plaintiff, Ricardo Soto ("Plaintiff" or "Soto"), individually, and on behalf of all others similarly situated, through his undersigned counsel, and for his Class Action Complaint against Defendant, Cardone Ventures, LLC ("Defendant" or "Cardone Ventures"), states:

## INTRODUCTION AND BACKGROUND ON THE TCPA

1. Plaintiff brings this case to protect his privacy rights; namely, the right to be left alone from unwanted telemarketing phone calls.

2. Plaintiff brings this suit in an effort to stop companies like Defendant from sending text messages to him and the putative class (defined below) members' phones despite the fact that Plaintiff and the putative class members expressly requested Defendant stop sending them text messages, and Defendant expressly promised to stop sending text messages to Plaintiff and the putative class members.

3. When companies, like Defendant, receive a request to stop sending text messages to a recipient of such messages, such companies have an obligation to place the person making the stop request on the company's internal do-not-call list, and to no longer send text messages to the person.

4. In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the Telephone Consumer Protection Act ("TCPA") into law, to protect consumers' privacy rights; namely, the right to be left alone from unwanted telemarketing communications. A leading sponsor of the TCPA described unwanted telemarketing communications as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

5. The TCPA affords special protections for people who request to be placed on a company's internal do not call list. Specifically, the TCPA provides that each person who receives more than one call on their cell phone after requesting to be placed on the company's internal do not call list is entitled to recover a penalty of


$500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated. 47 U.S.C. § 227(c)(5).

6. The problem with receiving unwanted telemarketing communications is a problem that most people in this country, like Soto, frequently face. For example, in 2024 alone, approximately 52.8 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited January 15, 2025).

7. Decades after the TCPA passed into law, it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." *Omnibus TCPA Order*, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

8. In fact, in 2023 alone, there were more than two million do-not-call complaints to the FTC about unwanted telemarketing calls. Federal Trade Commission ("FTC"), *FTC Issues Biennial Report to Congress on the National Do Not Call Registry* (Jan. 8, 2024) *available at*: https://www.ftc.gov/news-events/news/press-releases/2024/01/ftc-issues-biennial-report-congress-national-do-not-call-registry (last visited October 4, 2024).

9. The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission ("FCC") levied more than $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

**JURISDICTION AND VENUE**

10. This Court has subject matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this Court original jurisdiction of all

civil actions arising under the laws of the United States.

11. This Court has personal jurisdiction over Defendant because it transacts business in California, directly markets its products and services in California, and sells various products and services in California, and for the reasons otherwise set forth in this Complaint.

12. Defendant has continuous and systematic contacts with the State of California.

13. Soto was (and is) a resident and citizen of Rancho Cucamonga, California at all times relevant to this Complaint.

14. Venue is proper under 28 U.S.C. §§ 1391(b)(2) as a substantial portion of the events giving rise to the claims herein arose in this District and the harms of Defendant's actions were sustained in this venue.

## PARTIES

15. At all times relevant to this Complaint, Soto was, and is still, the owner of a cell phone, with a phone number of 760-XXX-9607.

16. The monthly bill associated with Soto's phone number is issued in his name, and not in the name of a business.

17. Soto uses his cell phone primarily for personal purposes, such as communicating with friends and family members.

18. Defendant Cardone Ventures, LLC is a Delaware limited liability company with one of its headquarters in the State of Arizona. Defendant has at all times relevant to this Complaint been in good standing to transact business in the State of California, and throughout the United States.

19. Defendant's website is www.cardoneventures.com.

20. Grant Cardone is identified on Defendant's website as Defendant's co-founder.

21. Defendant offers a variety of products and services that are represented as being able to help individuals achieve personal growth and grow their businesses.

22. Defendant's products and services include, but are not limited to: live events, workshops, private coaching, books and even health products such as supplements, genetic tests and blood tests.

23. Defendant's products and services are often branded "10X."

24. Defendant markets its products in services, in part, through telemarketing, including the sending of text messages.

25. Defendant's privacy policy on its website states that the recipient of a text message from Defendant can stop receiving such messages. Specifically, the policy states, "You can cancel the SMS service at any time. Just text STOP to [the short code]. After you send the SMS message STOP to us, we will send you an SMS message to confirm that you have been unsubscribed. After this, you will no longer receive SMS messages from us."

## DEFENDANT'S TEXT MESSAGES TO PLAINTIFF

26. On January 26, 2024, Defendant sent a text message to Plaintiff stating:

Attention Business Owners: Don't miss this FREE growth event tomorrow!

Reserve your spot now: https://grantcardone.com/grownow

Grant Cardone

txt stop to unsubscribe msg and data rates may apply

27. As Soto no longer wanted to receive text messages from Defendant, he followed Defendant's instructions that same day and responded, "Stop."

28. Defendant then immediately responded to Soto's "Stop" request by stating, "You are now unsubscribed from these messages. Reply "START" to receive messages from this sender again."

29. Despite Soto's request to no longer receive text messages from Defendant and despite Defendant's promise to no longer send Soto text messages, Defendant continued to send text messages to Soto.

30. On November 29, 2024, Defendant sent Soto a text message stating:

Ricardo, BLACK FRIDAY!

Buy 1 GrowthCon Ticket (MGM Vegas, Mar 19-21, 2025) & get 1 Business/Real Estate event FREE!

Reply "Yes" now!

-Grant Cardone
Data/rates/txt stop opt out

31. Again, per Defendant's instructions, Soto responded to the text message that day by stating, "Stop."

32. Defendant immediately responded to Soto's text message, stating, "You have successfully been unsubscribed. You will not receive any more messages from this number. Reply START to resubscribe."

33. Between the date of Soto's initial stop request and the November 29, 2024, text message, Soto did not resubscribe or provide any form of consent to receive text messages from Defendant.

34. Despite Soto's two requests to no longer receive text messages from Defendant and despite Defendant promising on two occasions to no longer send Soto text messages, Defendant continued to send text messages to Soto.

35. On December 3, 2024, Defendant sent Soto a text message, stating:

Ricardo, 10X GrowthCon CYBER WEEK OFFER!

Reply "Yes" now to unlock the best deals on my 10X Growth Conference at the MGM Grand, Las Vegas.

-Grant Cardone
Data/rates/txt stop opt out

36. Again, per Defendant's instructions, Soto responded to the text message that day by stating, "Stop."

37. Defendant immediately responded to Soto's text message, stating, "You

have successfully been unsubscribed. You will not receive any more messages from this number. Reply START to resubscribe."

38. Between the date of Soto's initial stop request and then December 3, 2024, text message, Soto did not resubscribe or provide any form of consent to receive text messages from Defendant.

39. Despite Soto's three requests to no longer receive text messages from Defendant and despite Defendant promising on three occasions to no longer send Soto text messages, Defendant continued to send text messages to Soto.

40. On January 4, 2025, Defendant sent Soto a text message, stating:

Ricardo, 10X GrowthCon OFFER!

Reply "Yes" now to unlock the best deals on MY 10X Growth Conference at the MGM Grand, Las Vegas.

-Grant Cardone
Data/rates/txt stop to opt out

41. Again, per Defendant's instructions, Soto responded to the text message that day by stating, "Stop."

42. Defendant immediately responded to Soto's text message, stating, "You have successfully been unsubscribed. You will not receive any more messages from this number. Reply START to resubscribe."

43. Despite Soto's four requests to no longer receive text messages from Defendant and despite Defendant promising on four occasions to no longer send Soto text messages, Defendant continued to send text messages to Soto.

44. On January 7, 2025, Defendant sent Soto a text message, stating:

Ricardo,

This will officially be my LAST 10X Growth Conference . . . ever!

Reply "Yes" to be a part of history.

-Grant Cardone

CLASS ACTION COMPLAINT                                  - 6 -

Data/rates/txt stop to opt out

45.     On January 15, 2025, Defendant sent Soto a text message, stating:

Ricardo,

Beat the Price increase for my LAST 10X Growth Conference!

Reply "Yes" before it is too late . . (sic)

-Grant Cardone
Data/rates/txt stop opt out

46.     Each of the text messages at issue were sent from short code 310777.

47.     Soto seeks recovery individually, and on behalf of the putative class members for the post-stop text messages Defendant sent to Plaintiff and the putative class members. Soto does not seek recovery for the text messages sent by Defendant that confirmed Soto and the putative class members would no longer be sent text messages.

48.     Soto's dispute has nothing to do with any of Defendant's products, services or platforms. Rather, this dispute solely relates to Defendant sending of text messages to Soto and the putative class members after requesting that Defendant stop sending such text messages (and Defendant promised to stop sending such messages).

## **DIRECT AND VICARIOUS LIABILITY**

49.     Without the benefit of discovery, and because Defendant disclosed its identity in the text messages at issue, Soto assumes Defendant directly sent the text messages at issue.

50.     However, if some or all the text messages were made by third-party/parties on behalf of Defendant, in the alternative, Defendant is vicariously liable for those text messages.

51.      On May 9, 2013, the FCC determined that telemarketers like Defendant could not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by

outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 F.C.C. Rcd. 6574 at 6588 (May 9, 2013) (internal citations omitted).

52. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id*. at 6587 n. 107.

53. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593.

54. If Defendant directly sent the text messages at issue to Soto and the putative class members, Defendant is directly liable for the sending of those text messages.

55. However, Defendant may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third-party telemarketers.

56. If Defendant did not directly send the text messages to Soto and the

putative class members, Defendant's third-party telemarketers had actual and/or apparent authority to act on behalf of Defendant.

57. Likewise, Defendant also ratified its agents' violations of the TCPA by accepting sales from unlawful telemarketing communications.

58. Defendant controlled or had the right to control the marketing activities of those acting on its behalf.

59. Defendant acted as principals to telemarketing agent(s) who were acting on their behalf.

60. Defendant is not permitted under the law to outsource and contract their way out of liability by directing and benefitting from their captive agents' TCPA violations.

61. For the count identified below, if Defendant directly sent the text messages and/or calls at issue to Soto and the putative class members, it is directly liable. Alternatively, to the extent any text messages were sent/placed by a third-party agent(s) acting on Defendant's behalf, Defendant is vicariously liable for those unlawful communications.

## CLASS ALLEGATIONS

62. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiff brings this lawsuit as a class action on behalf of himself and all others similarly situated. This action satisfies the requirements of Rule 23.

63. Soto seeks to represent the following class (the "Class"):

> All persons in the United States from four years prior to the filing of this action through class certification to whom: (1) Defendant sent text messages marketing its products or services, (2) Defendant sent more than one text message to the person in a twelve-month period, and, (3) Defendant sent such text messages after the person requested that Defendant stop sending them text messages.

64. Soto reserves the right to add administrative subclasses, or to amend the definition of the proposed Class, as this lawsuit proceeds.

65. The members of the proposed Class are so numerous that joinder of all members is impracticable. Soto reasonably believes that hundreds or thousands of people have been harmed by Defendant's actions. The phone numbers of the members of the proposed Class are readily identifiable through records available to Defendant or those acting on their behalf.

66. Most members of the proposed Class have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

67. On information and belief, Defendant has texted, and continue to text, people whose numbers should have been placed on Defendant's internal do-not-call list. It is reasonable to expect that Defendant will continue to place such text messages, absent this lawsuit.

68. Common questions of law and fact exist as to all members of the proposed Class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed Class include, but are not limited to:

   a. Whether Defendant's conduct of placing text messages to persons who requested to no longer receive text messages from Defendant violates 47 U.S.C. § 227(c) and/or the TCPA's corresponding regulations;

   b. Whether the text messages were "solicitations," as defined by the TCPA;

   c. Whether Defendant's conduct violates the rules and regulations implementing the TCPA; and

   d. Whether Soto and the putative Class members are entitled to increased damages for each violation based on the willfulness of Defendant's conduct.

69. Soto's claims are typical of the claims of the proposed Class members because his claims arise from the same practice that gives rise to the claims of the members of the proposed Class and are based on the same legal theories.

70. Soto and his counsel will fairly and adequately protect the interests of

the members of the proposed Class. Soto's interests do not conflict with the interests of the proposed Class he seeks to represent, and he has retained lawyers who are competent and experienced in class action litigation, TCPA litigation and consumer law.

71. Soto's counsel will vigorously litigate this case as a class action.

72. A class action is superior to all individual lawsuits for this controversy. Joinder of all proposed members of the proposed Class in one action is impracticable, if not impossible, and prosecuting hundreds or thousands of individual actions is not feasible. The size of individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most members of the proposed Class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed Class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

73. In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

74. Questions of law and fact, particularly the propriety of placing text messages to persons after such persons requested to no longer receive text messages (and after Defendant promised to stop sending such text messages), predominate over questions affecting only individual members.

75. Defendant has acted or refused to act on grounds that apply generally to the Class, making final injunctive relief or corresponding declaratory relief is appropriate with respect to the Class as a whole.

## COUNT I
**Violations of the Telephone Consumer Protection Act**
**47 U.S.C. § 227(c), *et seq.* (Internal Do-Not-Call List Violations)**

76. Plaintiff incorporates by reference the allegations of the previous

paragraphs as if fully stated in this Count.

77. The TCPA provides that "a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may recover $500 for each violation, and up to $1,500 for each violation, if the violation is determined to be willful. *See* 47 U.S.C. § 227(c)(5).

78. The regulations prescribed under Section 227(c) require companies like Defendant, who engage in telemarketing to institute "procedures for maintaining a list of persons who request not to receive telemarketing calls on or behalf of that person or entity." *See* 47 C.F.R. § 64.1200(d).

79. These procedures must meet several minimum standards, including, but not limited to:

(1) ***Written policy.*** Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) ***Training of personnel engaged in telemarketing.*** Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) ***Recording, disclosure of do-not-call requests.*** If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may

not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

**(4)** *Identification of sellers and telemarketers.* A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

**(5)** *Affiliated persons or entities.* In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

**(6)** *Maintenance of do-not-call lists.* A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

*See* 47 C.F.R. § 64.1200(d)(1)-(6).

80.   Defendant failed to maintain and/or implement these minimum standards

by repeatedly sending text messages to Soto and the putative class members after Soto and the putative class members requested that Defendant stop sending them text messages, and Defendant promised to abide by such requests.

81. In addition, the TCPA allows the Court to enjoin Defendant from sending text messages to phone numbers that should have been placed on Defendant's internal do-not-call list. *See* 47 U.S.C. §§ 227(c)(5)(A).

82. By sending text messages to the cell phones of Soto and the putative class members after their numbers should have been placed on Defendant's internal do not call list, Defendant violated the TCPA, including, but not limited to, 47 U.S.C. § 227(c) and the TCPA's corresponding regulations.

83. Defendant knew or should have known that Soto and the putative class members did not wish to receive text messages as such persons expressly advised Defendant that they did not wish to receive text messages from Defendant, and Defendant promised it would no longer send such messages.

84. Soto and the putative class members are entitled to damages of $500.00 per violation for each text message sent by Defendant in violation of the TCPA and up to $1,500.00 per violation if the Court finds that Defendant willfully violated the TCPA.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff Ricardo Soto, individually, and on behalf of all others similarly situated, requests that the Court:

a. Enter an order pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying the proposed Class, appointing Plaintiff as the Class representative, and appointing his counsel as class counsel;

b. Enter judgment in favor of Plaintiff and the Class members for all damages and other relief available under the TCPA, 47 U.S.C. § 227(c), including injunctive relief, statutory damages of up to $500 per violation, and up to $1,500 per violation if Defendant willfully violated the TCPA;

    c.    Enter a judgment in favor of Plaintiff and the Class that enjoins Defendant from violating the TCPA's provisions and regulations;

    d.    Enter judgment in favor of Plaintiff and the Class for all applicable pre-judgment and post-judgment interest amounts;

    e.    Enter judgment in favor of Plaintiff and the Class for all costs, including the cost of class notice; and

    f.    Award Plaintiff and the Class members such further and other relief the Court deems just and appropriate.

## **DEMAND FOR JURY TRIAL**

Please take notice that Plaintiff demands a jury trial.

Dated: January 16, 2025

Respectfully submitted,

MILLER SHAH LLP

*/s/James C. Shah*
James C. Shah (SBN 260435)
Email: jcshah@millershah.com
Kolin C. Tang (SBN 279834)
Email: kctang@millershah.com
19712 MacArthur Blvd., Suite 222
Irvine, California 92612
Telephone: (866) 540-5505
Facsimile: (866) 300-7367

BUTSCH ROBERTS & ASSOCIATES LLC

*/s/Christopher E. Roberts*
Christopher E. Roberts (phv forthcoming)
Email: CRoberts@butschroberts.com
7777 Bonhomme Avenue, Suite 1300
Clayton, Missouri 63105
Telephone: (314) 863-5700

HASEEB LEGAL, LLC

*/s/ Syed Hussain*
Syed H. Hussain (phv forthcoming)
Email: sh@haseeblegal.com
420 E. Waterside Drive, Suite 3004
Chicago, Illinois 60601
Telephone: (630) 534-2527

*Attorneys for Plaintiff*